UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ERIC JOHNSON, ) | Civil Action No.: 4:12-cv-1271-MGL-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ERIC HOLDER, ATTORNEY GENERAL; ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## I.    INTRODUCTION

This employment action arises out of Plaintiff's employment with the Federal Bureau of Prisons (BOP). Plaintiff alleges that he was not selected for a position at the Metropolitan Detention Center in Brooklyn, New York (MDC Brooklyn) in retaliation for his wife's participation in protected activity while she worked at FCI Williamsburg in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. Presently before the court is Defendant's Motion for Summary Judgment (Document # 16). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II.    FACTS

Plaintiff has been employed by the BOP since 1997. He was first hired at MDC Brooklyn, and transferred to FCI Williamsburg in 2003. Plaintiff applied for at least two positions at MDC Brooklyn in 2009, but was not selected until he applied for another opening in 2011, when he transferred to the powerhouse at MDC Brooklyn. He is presently employed at MDC Brooklyn as a utility system repair operator. Pl. Dep. pp. 5-6.

Plaintiff's wife, Tasha Johnson, was also employed with the BOP at FCI WIlliamsburg. In 2008 and 2009, she filed three different charges of discrimination alleging discrimination based upon disability, sexual harassment and retaliation. T. Johnson Aff. p. 11 (Ex. 1 to Pl. Response to Def. Motion for SJ in 4:10-cv-1222-JMC-TER).

Throughout his employment with the BOP, Plaintiff received positive performance evaluations. Pl. Performance File (Ex. 1 to Pl. Response). He received an "exceeds" rating in every category in 2006, 2007, 2008, 2009. Id. In the fall of 2009, Plaintiff applied for the position of Utility Systems Repair Operator at MDC Brooklyn (Vacancy Announcement BRO-2009-0050). The position was not filled. Pl. Supplemental Aff., Report of Investigation p. 6. (Ex 1 to Def. Motion); McGrady Aff., Report of Investigation p. 78 (Ex. 2 to Def. Motion); Terrell Dec., Report of Investigation pp. 66-67 (Ex. 3 to Def. Motion); Delegated Examining Unit Certificate Return Form, Report of Investigation, p. 108 (Ex. 4 to Def. Motion). By September 24, 2009, the Warden had determined that no selection would be made for the position due to the small applicant pool. Delegated Examining Unit Certificate Return Form.

In a facilities meeting at MDC Brooklyn in 2010, a Utilities System Repair Operator, Dexter Serrao, noted the shortage of employees in his department and inquired with Associate Warden (AW) Williams as to whether the position would be filled soon. Serrao Dep. pp. 12-13. Serrao mentioned that he knew someone who was interested in the position.[1] Id. p. 13. AW Williams replied that there were some issues there. Id. p. 16; see also Davis Dep. p. 12. Serrao did not ask AW Williams to elaborate. Id. Serrao did not know the issues to which AW Williams referred, and

---

[1] Serrao testified that he knew Plaintiff from his previous employment at MDC Brooklyn. Serrao Dep. p. 12.

no one mentioned Plaintiff's name during the meeting. Id. p. 17.[2]

Initially, Plaintiff identified Warden Duke Terrell as the selecting official for the position at issue. Pl. Supplemental Aff., Report of Investigation p. 24; Complaint ¶ 33. However, Warden Terrell did not assume Warden responsibilities at MDC Brooklyn until October 25, 2009, and, thus, was not the Warden at the time the decision was made not to fill the position. Terrell Dec., Report of Investigation p. 68. Instead, Warden Cameron Lindsay was the Warden of MDC Brooklyn from 2007 until October of 2009. Lindsay Dec., Report of Investigation p. 115. Warden Lindsay averred that he does not know Plaintiff or his wife. Id.

During his deposition in a previous litigation[3], Plaintiff testified that he did not know why anyone at MDC Brooklyn would care about his wife's EEO activity and that AW Williams neither knew his wife or that she had filed an EEO complaint. Pl. Dep. pp. 67, 73-74; Def. Memo. p. 6.

### III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any

---

[2]In his Response, Plaintiff asserts that he was the only individual attempting to return to MDC Brooklyn, that there were no issues in his employment file except for the EEO complaints made by his wife, and that he was the most qualified applicant for the position at issue. However, the evidence cited is insufficient to support these assertions. First, Plaintiff cites to the deposition of Donald Davis, in which the deposing attorney asks, "[D]id you know at that time that Mr. Johnson was the only one on the list to come to Brooklyn?" to which Davis responds, "I didn't, me personally, know who was on the list, but there was rumors that he was the only one on that list." Davis Dep. p. 13. Also, Plaintiff's employment file attached to Plaintiff's Response contains no reference to his wife's EEO activity. Pl. Performance File. Finally, in support of his assertion that he was the most qualified applicant for the position, Plaintiff attaches copies of what appear to be the job description and information regarding Plaintiff and one other applicant. Supplemental Report of Investigation pp. 95-104 (Ex. 1 to Pl. Response).

[3]Johnson v. Holder, C/A No. 4:11-cv-2650-RBH.

cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.    DISCUSSION**

Title VII makes it an "unlawful employment practice for an employer to discriminate against

any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). In the absence of direct evidence, the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies in retaliation cases. Generally speaking, to establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity, (2) the employer took adverse employment action against him, and (3) a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 258 (4th Cir.1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998). If Plaintiff establishes a prima facie case, Defendant can rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. At that point, Plaintiff has the opportunity to prove that Defendant's legitimate, non-retaliatory reason is pretextual. Matvia v. Bald Head Island Management, 259 F.3d 261, 271 (4th Cir.2001).

Plaintiff alleges that he was subjected to retaliation for his wife's[4] participation in EEO activity. Specifically, he alleges that Defendant took adverse action against him by publishing false information concerning his employment with FCI Williamsburg, which lead to his non-selection for the position at MDC Brooklyn. Complaint ¶¶ 52 – 54. The Supreme Court addressed the issue of third-party retaliation in Thompson v. North American Stainless, LP, 131 S.Ct. 863 (2011). There, the plaintiff claimed he had been fired because his fiancée engaged in activity protected under Title VII. Quoting its holding in Burlington N. & S.F.R. Co. v. White, 548 U.S. 53, 68 (2006), that "Title

---

[4] The Complaint specifically states "his and his wife's participation in EEO activity." Complaint ¶ 53. However, in his Response, he relies only on his wife's protected activity.

VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination,' " the Court easily found that it is "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancée would be fired." Thompson, 131 S.Ct. at 868.

The more difficult question the Court faced in that regard was just how broad a net to cast over the class of protected individuals:

> We must also decline to identify a fixed class of relationships for which third-party reprisals are unlawful. We expect that firing a close family member will almost always meet the Burlington standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize. As we explained in Burlington, 548 U.S. at 69, 126 S.Ct. 2405, "the significance of any given act of retaliation will often depend upon the particular circumstances."

Id. The Court "[reemphasized], however, that 'the provision's standard for judging harm must be objective,' so as to 'avoid the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.' " Id. (quoting Burlington, 548 U.S. at 68–69). Plaintiff alleges that Defendant failed to select him for a certain position as a result of his wife's protected activity. Thus, the circumstances presented here fall closer to the "firing of a close family member" than "a milder reprisal on a mere acquaintance."

The holding in Thompson does not appear to change the general, prima facie framework applied in retaliation cases. It is undisputed that Plaintiff's wife engaged in protected activity by filing three Charges of Discrimination in 2008 and 2009. Thus, Plaintiff must show that he suffered an adverse employment action and that a causal connection exists between the adverse action and Johnson's protected activity.

In his Response, Plaintiff does not specifically identify the adverse action he suffered. In his Complaint, he alleges that Defendant took adverse action against him by publishing false information concerning his employment with FCI Williamsburg, which lead to his non-selection for the position

at MDC Brooklyn. However, in his Response, Plaintiff appears to argue that the adverse action was the non-selection for the MDC Brooklyn position. Because no evidence has been presented to show that Defendants published false information about Plaintiff, the undersigned will assume that the adverse employment action at issue here is Plaintiff's non-selection for the MDC Brooklyn position. Defendant does not dispute that Plaintiff suffered such an adverse action.

Finally, to establish a prima facie case of retaliation, Plaintiff must present sufficient evidence to show that a causal connection exists between his wife's EEO activity and his non-selection for the MDC Brooklyn position. Plaintiff fails to address this threshold requirement in his Response. Rather, he jumps ahead to argue that Defendant's reason for not selecting Plaintiff for the MDC Brooklyn position was pretext. However, "a court reviewing a Title VII claim does not reach the pretext issue until after it has determined that the plaintiff has surpassed the hurdle of establishing a prima facie case of discrimination." McDonald v. Rumsfeld, 166 F.Supp.2d 459, 463 (E.D.Va. 2001), see also Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (holding that although the plaintiff's burden is not onerous, it nevertheless requires him to prove by a preponderance of the evidence a prima facie case of discrimination); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("The plaintiff ... must first establish, by a preponderance of the evidence, a 'prima facie' case ...."); Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir.2004) ("'[T]he plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence.'"); Mereish v. Walker, 359 F.3d 330, 334 (4th Cir.2004) ("[A]ppellants must first establish a prima facie case of discrimination by a preponderance of the evidence.").

An employer's knowledge that the employee (or here, his wife) engaged in protected activity is "absolutely necessary to establish the third element of a prima facie case." Dowe v. Total Action

Against Poverty, 145 F.3d 653, 657 (4th Cir.1998); see also Baqir v. Principi, 434 F.3d 733, 748 (4th Cir.2006); Hooven-Lewis v. Caldera, 249 F.3d 259, 273 (4th Cir.2001). It is not entirely clear from the record who made the decision not to select Plaintiff for the position at issue at MDC Brooklyn. However, Plaintiff has failed to show that anyone at MDC Brooklyn was aware of Plaintiff's wife's EEO activity. Further, Plaintiff testified during his deposition that neither the Warden at MDC Brooklyn at the time, Warden Lindsay, nor Assistant Warden Williams knew Plaintiff's wife. He further testified that AW Williams did not know that his wife had engaged in EEO activity. To the extent Plaintiff relies on AW Williams' statement during the facilities meeting that an applicant for the position had some issues to show some causal connection, that reliance fails. The court would have to engage in rank speculation to find that an issue of fact exists as to whether AW Williams was talking about Plaintiff and that the issues he spoke of regarded Plaintiff's wife's EEO complaints.

In sum, Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to whether a causal connection exists between Plaintiff's wife's protected activity and the failure to select Plaintiff for the position at issue at MDC Brooklyn. Thus, Plaintiff fails to establish a prima facie case of retaliation and summary judgment is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 16) be granted and this case be dismissed in its entirety.

        s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

December 5, 2013
Florence, South Carolina